The first case is Arbor Global Strategies v. Samsung Electronics, No. 22-1465. Mr. Lerman, when you're ready. Thank you, Your Honor. May it please the Court, Dan Lerman, Free Appellant, Arbor Global Strategies. The Board's procedures here violated the Administrative Procedure Act and it reached the wrong conclusion on obviousness. I would like to start with our APA claim before turning to obviousness. Section 554 of the APA prohibits agency employees involved in investigative or prosecuting functions from participating in a decision by the agency. But this has already been resolved. I don't think it has, Your Honor, and I don't think Ethicon resolved this issue for three reasons, if you'd let me try and explain. First, Ethicon did not squarely address the APA challenge. The holding in Ethicon was that delegation to the same panel did not violate the Due Process Clause and it did not violate the America Invents Act. It was not an APA decision. The parties did not brief the APA question. This Court addressed it simply in a footnote stating that Section 554 prohibits commingling of functions. And this Court has made clear that prior panel decisions that do not squarely address an issue are not binding on subsequent panels. We cited some of those cases, but one which is relevant is an Arthrex decision from 2018, which is an IPR decision. The question there was whether an adverse disposition, dismissing an institution decision, was appealable. The Court held that it was, even though in St. Jude, this Court stated that, quote, the only IPR decision that was appealable is the final written decision. And the Court held that it was an appeal, that St. Jude was not binding because it did not squarely address the issue. So our position is that Ethicon did not squarely address the issue. So your view is that every time we make a holding about whether some structure or something, some right of appeal or whatever is okay, that as long as you can keep coming up with new arguments for it that weren't raised before, we have to keep addressing it over and over and over again? Well, no, it's not simply a new argument. I mean, here it's a specific statute that was not addressed by the Court. Well, it's a new argument. Well, I mean, it is both a new argument and a new claim, Your Honor. I mean, the APA claim, Section 554, was not addressed by the parties. It was not really addressed by this Court. And the statements that this Court made with respect to adjudication and prosecution were called into question by subsequent opinions from the Supreme Court and from this Court, which make clear that institution is the... What Supreme Court decision do you think suggests that the same panel can't institute and reach a merits decision? Well, they don't address that precise argument, Your Honor. What they do is in Quozo, the Supreme Court stated that institution is akin to a grand jury's indictment. In Milan and in Saint... I think we were aware of Quozo when we decided Ethicon in 2016, weren't we? Or was it... I think it was after, Your Honor. Our Quozo decision... What's that? Wasn't our Quozo decision before? Which decision? I'm sorry. Quozo. Quozo, I believe, came after Ethicon, Your Honor. Okay, the Supreme Court decision. The Supreme Court's Quozo came after this Court's decision in Ethicon, Your Honor. And since then, in Milan and Saint Vita... The Supreme Court decision in Quozo, though, didn't have anything to do with the argument you're making. It did not address the argument we're making. What it did was address the nature of inter partes proceedings. And it described them as akin to a grand jury indictment. This Court then, relying on Quozo, said that institution is like an agency's decision to initiate or not initiate an agency enforcement action based upon third parties. The Attorney General's report on the APA defines prosecution for purposes of this particular provision as making a preliminary decision to proceed to a formal hearing. That is what institution is. And the PTO, in its briefing in Palo Alto, and we cite this in our brief on page 22, in its briefing in Palo Alto, which came after Ethicon, after Quozo, it cited Quozo and stated that, quote, institution decision does not adjudicate the rights of the parties, but instead merely determines whether an agency will initiate such an adjudication. That statement came after Ethicon, after Mobility Works, after Quozo, after oil states. And that is the definition of prosecution that the Attorney General's report on the APA used. There is no... What's wrong with the analogy to a preliminary injunction determination by a district court on likelihood of success on the merits versus, you know, an ultimate decision on the merits, or the Supreme Court cert decision versus making a decision on the merits? Why are those analogies not at all persuasive? I think they're not persuasive for several reasons, Judge Stark. First, the APA doesn't apply to Article III courts, and so I would say that those analogies are beside the point. Congress made particular rules for agencies, and they don't bind to Article III courts. But the analogies are inept in any event. Those decisions are not committed to agency discretion by law. They're not based upon policy considerations. They are appealable. And most importantly, Your Honor, they do not trigger a formal proceeding. That's what institution is. Like an indictment, it triggers a formal agency here. Your contention, I thought, is ultimately that the board is too biased by what it said at institution to have an open mind on the merits. That seems entirely analogous to the examples that I've given. Well, A, I would turn to the due process argument, but this is a distinct argument, which is the APA argument. There's a structural APA argument that I grant you was motivated in part. So your APA argument doesn't turn on bias. Correct. It was Congress was concerned with bias. But it doesn't turn on bias. But I mean, again, if you look at the APA section, page 56 of the attorney general's report on the APA, which defined prosecution to be the decision to proceed to a formal hearing, did in fact say that to eliminate bias, that that decision should be delegated to a different agency individual than the agency had. So I do think that the concerns are aligned in this case. But it is a different argument, and it's a statutory argument. I think our bias argument only lends further support to the argument that the agency can be biased, and that's why separating functions would eliminate that concern. I want to ask you about a slightly different contention you make. You seem to suggest there's something troubling about a district court and the PTAB having a kind of public back and forth in terms of whether litigation should be stayed or not. Here, I think the district court in parallel litigation denied a motion to stay, but indicated it would stay if the board instituted, and then the board referenced that when it instituted, and then the district court stayed. It seemed to me that's all contemplated by the AIA, and that there's nothing wrong with that. But you at least suggest, maybe I'm misinterpreting, that there's something nefarious going on. Could you help me with that? I don't think there's anything nefarious, Your Honor, with that procedure. What I will say is that what it displays is the potential for bias in this particular case. So you're right on the procedural posture. That's basically it in a nutshell. But what the agency did was it said that there would be a quote, that the petitioners made a quote, strong showing of unpatentability with respect to all the claims. Now, the standard for institution is a reasonable likelihood of prevailing on a single claim. As Your Honor suggested, the board made that determination because it was effectively addressing the district court's concern when the district court said it wouldn't stay unless the petitioners could show likelihood of success on all the claims. Our position is simply that by departing from the traditional standard and making that statement about a strong showing, the board effectively got ahead from out under its skis. And once you do that, it's hard to go back. After making that determination, it's hard to then say that the petitioners did not show by a preponderance of the evidence, which is the standard here, that even a single claim was invalid. And so our petition was that just sort of highlights part of the bias that can be inherent in these types of proceedings. So it wasn't that there was anything nefarious about the particular procedural posture, but it highlighted the procedural fairness infirmities that we think are endemic to the process. And the GAO report that we cite, I think, highlights some of those concerns, Your Honor. Part of the principle here is that these are, you know, essentially neutral adjudicators, but the GAO report, which came out after... Let me ask you something about the merits of your argument on means plus function. Is it your contention that we require that the same reference disclose both the structure and the function? I don't think it has to be the same reference, Your Honor. But what I do think, for obviousness, as opposed to anticipation, I think what Fresenius holds is that you need to point to a structure that corresponds to the claim function. Fresenius also went on to hold that that structure should be disclosed in the context of the claim function. So one example that it used was, in that case, there was a means plus function for delivering an anticoagulant agent. The associated structure was a stepper motor. What this court did was, and it conducted its own analysis of the prior art, and it saw that there was a stepper motor in the prior art, which was a claim function, but it wasn't disclosed in the context of the claimed function. I would submit that it wouldn't be sufficient to then point to a totally different structure, like a syringe administering an anticoagulant by a nurse or a doctor. That wouldn't be sufficient to render it obvious because it wasn't in the context of the claim function. What we have here is the board pointed to a series of references that disclosed the function, but do so using a totally different structure. It also pointed to a series of references that, in combination, it said disclosed or would have suggested the structure, but did not perform the function. And when you look at the references individually, also none of them, in fact, individually actually disclosed the structure. It was only in combination. So it's really the combination of all those factors, Your Honor, and the point that the structure that the board pointed to did not, in fact, accomplish the claimed function. In addition, by combining the references in that way, the board would have, the person of skill in the art would have had to abandon the very structure that accomplished the function. So the board relied, for example, in the Samsung proceedings on Cook and Trimburger as providing the function. It is undisputed that they do not use a wide configuration data for it. And I should back up and say the function was reconfiguring a programmable array within one clock cycle. The structure is a wide configuration data port connecting in parallel cells on one die element to cells in the other with contact points throughout the dies. It is undisputed that Cook and Trimburger, the function references, don't use a wide configuration data port. If it did, you wouldn't have had to combine the references. But by combining them in the way that the board said would have been reasonable to a person of skill in the art, you would have to abandon the very structures in Cook and Trimburger that were responsible for achieving that function. And the board did not explain why a person of skill in the art would have expected success in achieving Cook's function with a totally different structure. So it's really the combination of all those elements. It sounds like your arguments really boil down to substantial evidence. You're not saying there was a flaw in the legal analysis that the board undertook. Well, obviously, this is a mixed question. And to the extent that the board endeavored to interpret the prior art references, the nature and scope of the prior art, and the various grant factors, those are obviously substantial evidence,  But the ultimate conclusion is a legal question. And by failing that... But looking to more than one reference to find the structure in one and the function in the other, while you suggest in various places in your brief that that would be legal error, ultimately, you're not saying that's legal error. It's legal error with respect to the bottom line determinant of GSS. I think it's overstating the case to say that the board can never combine references. What we're saying is that in combining references in the way that it did so here, failed to disclose, failed to render obvious our invention. And in part, I mean, the board is obligated, as are all agencies subject to the APA. It has recent decision-making obligations under State Farm and the like. And part of our argument is that the board did not sufficiently explain how or why a person of skill of the art would have both been motivated to combine these and had a reasonable expectation of success in doing so. But again, just to clarify the point, it seems to me that what you just said confirms what Judge Stark just said, that this is basically a substantial evidence question, not a legal question. You're not arguing that if one reference shows a structure and the other reference shows function, that you simply cannot make out a 103 case. You're arguing that you can't make out a 103 case unless you can establish, as a matter of substantial evidence, that there was a reason to combine with a reasonable expectation of success. Well, part of that's true. I mean, there's still the legal area here under Fresenius. It doesn't necessarily need to be a single reference that does this. But you still need to point to a reference or a combination of references that either disclose or suggest the structure and do so in the context. But if the references disclose and teach enough to support the argument that one of ordinary skill in the art would have had a reason to combine, then obviousness is made out. Right. If those, if it's... I don't think you can read Fresenius as broadly as you seem to be reading it. To me, it's a fairly narrow ruling. Right. But even if you disagree with the reading in the briefs of Fresenius, it still stands for the proposition that the structure corresponding to the function must be disclosed. And it's stated that it should be disclosed in the context of the function. And that's the key element of what's missing here. The structure references are not disclosed in the context of the function. But the context is all about the teachings and what does the evidence show. It's not a legal question. Well, yes. The determination of what the prior artwork, the nature and scope of the prior art is a substantial evidence question, Your Honor. That's right. But the ultimate determination, whether or not they, in fact, disclose them in the context and whether or not a person, and whether putting all this together, a person of skill in the art would have found this to be obvious is a legal question. And our view is that as a legal matter, it would not have been obvious to a person of skill in the art, in part because of the legal errors in failing to account for these principles, which is how a person of skill in the art would have expected success. I mean, another aspect here is that the board did not explain,  in abandoning the structures that accomplished the function, how these would all be put together. And our position is that this is not a bologna sandwich where you could just swap out the bologna and swap in ham and say this is done. The board had an obligation to explain how the various circuits were combined, which cells connected to which cells. And it didn't do that. It pointed to their expert's contention that a person of skill in the art wouldn't just slap them together. But... Counsel, you've used all of your time. We'll restore some of your rubato, but let's hear from the other side now. Mr. O'Quinn, when you're ready. Thank you, Judge Hughes, and may it please the court. John O'Quinn on behalf of the appellees. I'm joined by Mr. Schneidman on behalf of Xilinx, and Ms. Kershman from the Justice Department. Arbor's arguments on appeal distort the law of obviousness as applied to means plus function claims, fail to grapple with the board's factual findings in these IPR decisions, and ask the panel to run roughshod over precedent upholding the director's delegation of institution authority to PTAB. Now, from the argument that we've just heard, it seems like Arbor is abandoning the first argument in its brief. I had taken their argument to be that Fresenius requires that a single reference disclose the entirety of a means plus function limitation. It's right that they've abandoned that argument. It's contrary to this court's precedent in Fleming v. Sirius, which is cited in our brief, which specifically address the fact that single limitations can be rendered obvious based on a combination of prior art. And I'll note that Fleming v. Sirius at page 1222, the page we cite in our brief, in turn cites a case called Randall v. Rhea, 733 F3rd at 1364 for that same proposition. I flagged that because Randall v. Rhea itself involved a means plus function claim, in which the court specifically said that the means plus function limitation could be found from a combination of prior art references. So that just leaves what I think is an attack on substantial, a substantial evidence attack on the board's reasoning. I think our briefs address at length why the board's decisions are supported on the facts, at least with respect to the Samsung IPRs, which I can address. I'm happy to answer any questions about those. Mr. Schneidman will answer any questions about the Xilinx ones. But obviousness here follows from three very, very basic propositions. The first one is that programmable arrays such as FPGAs were well known, as were the benefits of them. I don't think that's disputed. Connecting FPGAs with microprocessors and memories to have a reconfigurable processor was well known. That's indisputable. That is the Cook reference itself. And 3D arrangement technologies were well known, as taught by Koyanagi and by Burton. And the benefits of converting from two dimensions to three dimensions were explained in background prior art, like the Akasaka reference and the Alexander reference. I'm happy to answer any questions the court may have about that. If the court has none, I'll say a few words about the APA challenge that they've raised. And I think, first of all, this court's decisions in Ethicon and more recently in MobilityWorks foreclose the arguments that they are making. Now, my friend on the other side tries to suggest that Ethicon is somehow not binding because allegedly APA section 554D was not an argument that was being made in Ethicon. I don't understand that argument because if you look at the CERT petition that was filed in Ethicon, one of the things that was argued by Ethicon was that this court had purportedly erred because it, quote, characterized both the institution decision and the final written decision as adjudicative and therefore discounted the relevance of the Administrative Procedure Act's prohibition on investigating or prosecuting personnel participating in final adjudicative decisions, end quote, with Ethicon noting that this court had, in fact, quoted section 554D. But whatever you think of Ethicon, we have MobilityWorks, which reaffirmed the holding of Ethicon. It comes after a number of the precedents that my friend on the other side has cited and it came over a dissent that specifically discussed section 554D, that specifically discussed the Williams case, which they cited for the first time in their reply brief and specifically discussed the Arthrex case, which they discussed for the first time in their reply brief in their opening brief. They simply noted it in two footnotes for the proposition that the director delegates institution authority to the PTAB. So I think all those arguments were forfeited, as are their arguments based on the GAO's report, which were raised for the first time in their reply brief and which I would note that this court rejected nearly identical arguments based on the GAO report earlier this year in a case called New Vision Gaming, number 20-1400. I'm happy to answer any questions the court may have on any of these issues. Otherwise, I'll turn it over to my friend, Mr. Schneidman, to address. I'm just curious from your perspective, the bottom line, is there an open question under the APA that this court has to resolve because Ethicon and their cert petition, they can't change what the holding of the court is or is it your view that the question has already been decided by this court? Judge Stark, I think the question has been decided and in all events, the question of whether or not the decision to institute is an adjudicatory decision as opposed to a prosecutorial or investigatorial decision was squarely addressed by this court in Ethicon. That is their argument. Their argument is that it's not adjudicatory, that instead that it is prosecutorial and it doesn't matter that they're trying to pour new wine into old wineskins. It's the same exact argument, whether it's raised under the Due Process Clause, whether it's raised under the APA, whether it's raised under the AIA, but in all events, I think Mobility Works had the APA argument in front of it because that was discussed at length by the dissent in the Mobility Works case as well. And one other point while I'm on this, Judge Stark, I agree that the preliminary injunction analogy that you made reference to, I think is the apt analogy here. I'll offer two others where courts engage in discretionary decisions that are unreviewable that get to the same type of inquiry that the board has to make here. For example, a court of appeals, if a district court denies a certificate of appealability under 28 U.S.C. 2253, then the court of appeals has to decide for itself whether or not there's been a quote substantial showing. And no one has suggested that a court of appeals judge who makes that determination can't then sit on the subsequent panel or on the en banc court. And similarly, the Supreme Court in deciding certiorari decides discretionary decisions that are unreviewable all the time, which consider what they think, potentially consider what they think about the merits of a particular case as well as other discretionary factors in deciding whether or not to grant cert. Thank you, Judge Hughes. Mr. Schneiderman, you're up next. Thank you, Your Honors. I'm Jeffrey Schneiderman. I represent Xilinx, the appellee in four of these seven consolidated matters. And I joined Samsung and the government on the common issues, but I want to offer a straightforward way, I think, to resolve this appeal aside from the APA issues and resolve through the Xilinx cases, which is Xilinx is in a slightly different scenario than the Samsung cases. And the Xilinx final written decisions, if they are affirmed, would resolve the appeal because Xilinx challenged a superset of the claims that are at issue in this case that Samsung raised. And Judge Stark, you raised this bias question. I just want to flag that Arbor alleges no flaws in the Xilinx institution decisions, for example, and we note that in our brief at page 31, no. 19, there was no allegation of prejudgment. There was no allegation of bias. So here's the point I suppose I'd like to make, which is I heard my friend discuss how the structure has to be disclosed in the context of the function. And that's what the board did explicitly in the Xilinx cases. And I just want to point the court to this. I thought I was going to be talking about a situation where means plus function comes from different references. I agree. I think I heard a backing off from that, but I also want to make sure the court is aware that the PTAB engaged directly with that. And I direct the court to the final written decision of the 226 patent, which is appendix 568, where the board wrote this. The patent owner argues that petitioner relies on one reference for its structure in terms of another function, but this is not the case here. And then the board still notes at 568 that the function from the relevant portions of Tremberger with specific reference to the function attributed by Tremberger to the structure included from Tremberger is in the asserted combination. So Arbor concedes that this is what the board did. If I read the bottom of the blue brief at 37, Arbor wrote, unlike in the Samsung 226 patent IPR, however, the board determined that petitioner presents the structure and combination of Zvraky, Cherchescu, Akasaka, and Tremberger and the function from the relevant portions of Tremberger with specific reference to the function attributed by Tremberger to the structure included from Tremberger in the asserted combination. If we look back at what the board identified as what it included from Tremberger in the asserted combination, that's found at appendix 566 at the bottom. The petition persuasively shows that limitation 13.4, that's the means plus function, is taught not by Tremberger's teaching regarding the single memory access port that provides access to the configuration memory alone, but rather in combination with the description in Tremberger instantly switching to a new configuration with bit lines for a memory plane read simultaneously from configuration memory. And that echoes the board's earlier description of the relevant structure at Tremberger at appendix 553 and again at 563. To quote there at 563, Tremberger teaches that the entire configuration of the FPGA can be changed in a single cycle of the memory when the device is flash configured, all bits of the logic and interconnect array are updated simultaneously from one memory plane. So the board understood what was in the petition. The board cites the pages where that argument was made in the description. And we would rest on the fact that the board's fact finding was supported by substantial evidence. Can I, one question for you. Page 41 of the blue brief, Pat Nona argues the structure that Xilinx points to as achieving the functionality of the means plus function elements does not actually perform that functionality. Could you just address that again as page 41? Yes, so the board is, so the ARPA is incorrectly citing what the board actually relied on in the construction. In the file written decision, the portion I just quoted at 566, the board understood, and you have to understand, Judge Starks, I was the attorney below, we went through a series of claim constructions in this case. So what ultimately ended up at the end was different than what was at the beginning of the petition. And so at the very end, what we did, and especially in oral argument, is pointed to were the parts of the petition that provided the relevant structure under the claim construction. So the things that are cited in the blue brief at page 41 were not the final... It's an incomplete description. It's not what the board really relied on even. That's correct. Okay, thanks. I think when your honors write the brief, if you look and follow these references, you'll see that. So let me close just by saying as for the question of whether we can fairly discern the path that the board took in reasoning to get to his decisions, I say that the 390 pages of final written decision on these patents certainly provides that. And that's just for the Xilinx IPRs. Thank you, counsel. It's also your time. I heard Mr. O'Quinn pronounce your name, but I've forgotten how you say it. Deanna Karasong for the director. And I'm here to address the constitutional and APA issues. They're controlled by Ethicon and Mobility Works. Ethicon reasoned that both decisions are adjudicatory and that resolves both the constitutional and the APA challenge. So I'm happy to answer any questions. Otherwise, I'll rest on my briefs. I just have one. At page 13 of your brief, you wrote in deciding whether to institute IPR, the board reviews opposing views presented by different parties. That's not necessarily a part of the institution process, is it? Well, yes, your honor. So the process is that the petitioner in their petition makes their arguments and submits their evidence. And the board, by statute 314A, can't institute unless the petition viewed together with the response shows that there is a reasonable likelihood that the petitioner will prevail. But there's no necessity to consider opposing views presented by different parties. What you meant is they have to consider the standard of reasonable likelihood. Is that what you meant? Well, but the petitioner has the burden. Right, OK. The board doesn't have to hear from an opposing party at the institution stage, do they? There is an opportunity to file a response. I'm sorry if that wasn't clear. OK, thank you. Thank you. We'll restore your three minutes. OK, thank you, your honor. One point on the APA, or maybe two, and one on the merits. Obviously, a cert petition is a cert petition. It was denied, and we don't know why it was denied. That itself doesn't say anything. I would, again, point to the PTO's statement after MobilityWorks and after Epicon that the institution does not adjudicate the rights of the parties, but merely determines whether the agency will initiate such an adjudication. That statement is a concession that it is not an adjudication, but a prosecutorial act. To get to the last point made, lots of agency enforcement proceedings are prompted by third party complaints. The NLRB case, cited by the PTO here, as an example of when separation of functions would be required, is prompted by a complaint filed by a employee, or a union, or an employer. Then the office decides whether to move forward based upon that evidence, and then there's a hearing. That's analogous to what's happening here, and most agencies actually segregate those functions. The agency here did not do so. At one point on MobilityWorks, because I think Judge Hughes or someone else mentioned it, MobilityWorks simply quoted the Epicon money quote that said, nothing in the statute or the constitution prohibits delegation to the same panel. When it's talking about the statute, it's talking about the AIA. The whole discussion preceding that money quote was about whether the AIA's delegation provisions authorized the director to delegate to the same panel. I would submit that nothing in Epicon or MobilityWorks addressed this, I think as demonstrated by the PTO statement in Palo Alto, that institution is not an adjudication, but merely a decision to proceed to an adjudication, which is the definition of prosecutorial. On Trimburger, Your Honor, with respect to the Zillings patents, if Trimburger, in fact, disclosed the structure and the function, there wouldn't have been any combination. I think it has to be taken for granted that Trimburger did not do so. The fundamental point of distinction on Trimburger was they relied on this memory access port as potentially disclosing or teaching the wide configuration data port. I think it's well accepted that this is not what's responsible in Trimburger for achieving the one clock cycle reconfiguration. That is achieved by having eight different memory configuration cells distributed across the FPGA, and they're preloaded with data that can then shift to the FPGA rapidly. But our invention, Arbor's invention, allowed on-demand reconfiguration of the FPGA within one clock cycle, and that's the advance. My friend on the other side talked about how all these different aspects, whether it's stacking or FPGAs, were known. But what was not known was connecting them in this way, using a wide configuration data port to enable the one clock cycle reconfiguration, and that's the advance. That achieved benefits over the prior art, which suffered from many flaws. It wasn't in the prior art, the combination here, and we would submit that the board erred in concluding that it was obvious to do so. Thank you. Thank you. The case is submitted.